2024 WL 4783840
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Frank TUFANO, Plaintiff
v.
FENIX INTERNET, LLC, Defendant

CIVIL ACTION NO. 3:24-CV-1115
|
Signed October 29, 2024

**Attorneys and Law Firms**

Frank Tufano, Carbondale, PA, Pro Se.

**REPORT AND RECOMMENDATION**

William I. Arbuckle, United States Magistrate Judge

**I. INTRODUCTION**

***1** Frank Tufano ("Plaintiff") initiated this gender discrimination and antitrust action against Fenix Internet, LLC ("Defendant"), an entity Plaintiff identifies as the assumed operating LLC for OnlyFans. Plaintiff's claims arise out of Defendant's February 2023 decision to terminate Plaintiff's only active OnlyFans account for a violation of its terms of service. Plaintiff suggests that he did not violate the terms of service, and instead alleges that a third party accessed his account and did so. Plaintiff alleges that the termination of this account violates Title VII of the Civil Rights Act of 1964, the Sherman Antitrust Act, and the Federal Trade Commission Act.

Plaintiff sought and was granted leave to proceed *in forma pauperis*. (Doc. 6). On July 31, 2024, Plaintiff's complaint was reviewed pursuant to 28 U.S.C. § 1915(e)(2). (Doc. 7). Under this statute, the Court is required to dismiss any action in which a litigant is proceeding *in forma pauperis* that is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.[1] Following that initial review, we determined that Plaintiff's complaint did not state a claim upon which relief could be granted. *Id.* Then, we granted Plaintiff leave to file an amended complaint on or before August 31, 2024. *Id.*

On August 26, 2024, we received Plaintiff's amended complaint. This amended complaint is also subject to review pursuant to 28 U.S.C. § 1915(e)(2). For the reasons explained in this Report and Recommendations, we will recommend that Plaintiff's Amended Complaint be dismissed for failure to state a claim upon which relief can be granted and that further leave to amend be denied.

**II. BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff alleges that he was a "commissioned employee for OnlyFans in the past." (Doc. 8, ¶¶ 3-4). He explains that this "past" "commissioned employee" relationship involved business partnerships that ultimately failed. *Id.*

After those business partnerships failed, Plaintiff decided to pursue a different venture on his own. He created a new account, which he intended to use to promote his own "new" content. (Doc. 8, ¶ 5). In February 2023, however, Plaintiff's new account was terminated before he could use it. *Id.* He alleges that "an unknown user accessed his account and attempted to use it to promote themselves." (Doc. 8, ¶ 6). When this unknown user accessed Plaintiff's account, it violated OnlyFans terms of service. (Doc. 8, ¶ 7). As a result, the offending account was terminated, and the owner of that account (Plaintiff) was permanently barred from the platform. *Id.* Plaintiff alleges he made "repeated efforts to remediate and explain the situation with OnlyFans," but "they repeatedly refused to allow [Plaintiff] to use the platform." (Doc. 8, ¶ 8). He alleges that Defendant's decision to terminate Plaintiff's account is gender-based discrimination, violated the Sherman Act, and violated the Federal Trade Commission Act.

***2** As relief, Plaintiff requests:

> (a) Judgment on each of the claims set forth above against FENIX INTERNET LLC, or the legitimate operating entity for OnlyFans in the domestic USA.
>
> (b) An award of compensatory damages according to proof at trial, but in an amount no less than $30,000 per month that Frank Tufano has been unable to use the OnlyFans Platform ($510,000 as of July 2024) according to the realistic projected income of an online content creator with substantial following.

(Doc. 8, ¶ 33).

With these allegations in mind, we will now review Plaintiff's amended complaint under 28 U.S.C. § 1915(e)(2).

**III. LEGAL STANDARD**

This Court has a statutory obligation to conduct a preliminary review of complaints brought by plaintiffs who have been granted leave to proceed *in forma pauperis* and must dismiss a case *sua sponte* if: (1) the allegation of poverty is untrue, (2) the action is frivolous or malicious, (3) the complaint fails to state a claim upon which relief may be granted, or (4) the complaint seeks money damages from a defendant who is immune from suit.[2]

When conducting this screening analysis, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3] Thus, the district court must:

> "accept the facts alleged in [a plaintiff's] complaint as true," "draw[ ] all reasonable inferences in [his or her] favor," and "ask only whether [that] complaint, liberally construed, ... contains facts sufficient to state a plausible ... claim." *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015).[4]

A court need not "credit a complaint's 'bald assertions' or 'legal conclusions,' "[5] and does not need to assume that a plaintiff can prove facts not alleged.[6]

**IV. DISCUSSION**

**A. Liberal Construction of Plaintiff's Amended Complaint**

Litigants proceeding without counsel are commonly referred to as "*pro se*" litigants. The Court is required to construe *pro se* filings liberally. Thus, a *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers."[7] "Liberal construction of *pro se* pleadings means paying attention to what the litigant has alleged and using common sense, not supplying what plaintiff has not alleged or imagining that unpleaded facts exist."[8] *Pro se* litigants "still must allege sufficient facts in their complaints to support a claim."[9]

***3** Plaintiff is proceeding *pro se* in this case. Therefore, his pleading is entitled to liberal construction. In his amended complaint, Plaintiff asserts largely the same claims he alleged in his original complaint. Therefore, we will construe the amended complaint as asserting the following claims against Defendant:

(1) Claim One: a claim of gender discrimination under Title VII.

(2) Claim Two: a claim that Defendant entered into an agreement that unreasonably restrains trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.

(3) Claims Three and Five: a claim that Defendant engaged in anticompetitive conduct to maintain a monopoly in violation of § 2 of the Sherman Act because it failed to deal with Plaintiff when he sought to have his account reinstrated, 15 U.S.C. § 2.

(4) Claim Four: Defendant violated the Federal Trade Commission Act, 15 U.S.C. § 45.

Plaintiff's sixth claim is a request for discovery, which we will not address.

**B. Plaintiff Title VII Gender Discrimination Claim Should be Dismissed**

In claim one of his amended complaint, Plaintiff asserts a claim of disparate treatment discrimination under Title VII. He alleges that Defendant banned him from the OnlyFans platform for the terms of service violation because:

> 15. The majority of OnlyFans revenue comes from its 87% male audience, who is spending money to see predominantly female content creators.
>
> 16. It can be assumed that OnlyFans does not see as much value in its male content creators because of the insignificant amount of revenue they bring in compared to the female creators.
>
> 17. If OnlyFans did not think Frank Tufano would create a considerable source of income and value to their company based on his sex, they would have no issue prohibiting him from using the platform.

(Doc. 8, ¶¶ 15-17).

Title VII prohibits employment practices that discriminate based on an individual's "race, color, religion, sex, or national origin."[10] To make out a prima facie case of intentional discrimination under Title VII a plaintiff must show:

(1) the plaintiff is a member of a protected class;

(2) he was qualified for the position he sought to attain or retain;

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

(3) he suffered an adverse employment action; and

(4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.[11]

To establish the fourth element, a plaintiff may either: (1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action.[12] At this stage of litigation, Plaintiff "need not establish a prima facie case" to proceed because this is an evidentiary standard, not a pleading requirement.[13] Rather, Plaintiff need allege only "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."[14]

***4** Here, Plaintiff does not allege sufficient facts to support his Title VII claim. OnlyFans is a social media and creation platform through which consumers subscribe to original content uploaded by creators.[15] The consumer pays for access to a creator's content, a percentage of that payment goes to OnlyFans, and the remainder goes to the creator. The platform is "used primarily by sex workers who produce pornography, but it also hosts the work of other content creators, such as physical fitness experts and musicians." (Doc. 8, ¶ 1).

Plaintiff alleges that content creation forms a "commissioned employee" relationship with OnlyFans. (Doc. 8, ¶ 3). Plaintiff alleges he is a content creator, and generated income by using OnlyFans "in the past" using "two previous accounts." *Id.* He does not identify the nature of the content he produces. It appears that this "commissioned employee" relationship ended before the incident at issue in this case.

Plaintiff created a third account, with the intention of creating new content. Plaintiff alleges that this third account was terminated in February 2023 "before he could use it for promotion of new content." (Doc. 8, ¶ 5). Even applying Plaintiff's theory that content creation forms a "commissioned employment" relationship, no such relationship existed when his account was terminated in February 2023. At that point, Plaintiff created an account, but had not used it, and did not earn any commission from it. Therefore, Plaintiff has not adequately pleaded a theory or supporting facts to support his claim that he was an employee when Defendant terminated his OnlyFans account.

Even if, however, we could assume that the termination of Plaintiff's account was an adverse employment action, he does not allege sufficient facts to show that his account was terminated because of his gender. Plaintiff does not allege that he is aware of any female content creator who was treated more favorably under similar circumstances. Instead, he generally alleges that Defendant considers male content creators less valuable because most of its revenue comes from a "male audience spending money to see predominantly female content creators." (Doc. 8, ¶ 15). This implication, that the termination of a male content creator's account has less financial impact on Defendant is too speculative to give rise to an inference of gender discrimination.[16]

Therefore, we will recommend that claim one in Plaintiff's amended complaint be dismissed.

### C. Plaintiff's Sherman Act Claims

In claims two, three, and five Plaintiff alleges Defendant violated Sections 1 and 2 of the Sherman Act.

#### 1. Plaintiff's Claim that Defendant Violated Section 1 of the Sherman Act Should be Dismissed

In his second claim, Plaintiff alleges:

> 18. Under the Sherman Act, agreements among competitors to fix prices or wages, rig bids, or allocate customers, workers, or markets, are criminal violations. Other agreements such as exclusive contracts that reduce competition may also violate the Sherman Antitrust Act and are subject to civil enforcement.

(Doc. 8, ¶ 18).

***5** To state a claim under Section 1 of the Sherman Act, a plaintiff must allege:

> (1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted actions were illegal; and (4) that [he] was injured as a proximate result of the concerted action.[17]

The very essence of a claim under Section 1 of the Sherman Act is the existence of an agreement or some form of concerted action. The Third Circuit has explained:

> The first element—a contract, combination, or conspiracy—requires " 'some form of concerted action,' " which we define as " 'unity of purpose or a common design and understanding or a meeting of minds' or 'a conscious commitment to a common scheme.' " *Id.* (citing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 117 (3d Cir. 1999); *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004)). In other words, Section 1 claims always require "the existence of an agreement." *Id.* (citations and internal quotation marks omitted); *see also* *Howard Hess* [*Dental Labs, Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 254 (3d Cir. 2010)] ("Section 1 claims are limited to combinations, contracts, and conspiracies and thus always require the existence of an agreement."); *West Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 99 (3d Cir.2010) ("To prevail on a section 1 claim ... a plaintiff must establish the existence of an agreement."). Unilateral action, regardless of the motivation, is not a violation of Section 1. [*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 321 (3d Cir. 2010)].[18]

When a plaintiff fails to allege facts showing the existence of an "agreement" or "concerted action," dismissal of a claim under Section 1 of the Sherman Act is appropriate.[19] Here, Plaintiff alleges that price fixing agreements, wage fixing agreements, and exclusive contracts may violate the Sherman Act. He does not allege, however that Defendant actually entered into any of these types of agreements. Instead, he suggests that Defendant has an internal practice of treating high earning content creators better than low earning content creators. What Plaintiff describes is unilateral action. To satisfy the first element of a Section 1 Sherman Act claim he must allege facts showing Defendant engaged in *concerted* action. This requirement has not been met.

Therefore, we will recommend that claim two in Plaintiff's amended complaint be dismissed.

### 2. Plaintiff's Claims that Defendant Violated Section 2 of the Sherman Act Should be Dismissed

In his third and fifth claims, Plaintiff asserts claims alleging that Defendant unlawfully maintains a monopoly in violation of the Sherman Act. In his third claim Plaintiff alleges:

> ***6** 22. In general, any business—even a monopolist—may choose its business partners. However, under certain circumstances, there may be limits on this freedom for a firm with market power. As courts attempt to define those limited situations when a firm with market power may violate antitrust law by refusing to do business with other firms, the focus is on how the refusal to deal helps the monopolist maintain its monopoly, or allows the monopolist to use its monopoly in one market to attempt to monopolize another market[.]

(Doc. 8, ¶ 22).

In his fifth claim, Plaintiff alleges:

> 27. OnlyFans ius [sic] by far the most popular platform online with market share well exceeding billions of dollars. It is not possible to know the exact numbers without financial audits on the most popular content platforms, however, it would be a safe assumption that onlyfans maintains over 95% of the subscription-based creator market share.

(Doc. 8, ¶ 27).

To prevail upon a claim that Defendant engaged in conduct to maintain a monopoly in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, Plaintiff must show: "(1) the possession of a monopoly power in the relevant market and (2) the willful maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."[20] "The second element of a Section 2 violation is usually referred to by the shorthand of 'anticompetitive' or 'exclusionary conduct.' "[21]

Here, under claim five of the amended complaint, Plaintiff suggests that Defendant possesses approximately 95% of the subscription-based creator market share. (Doc. 8, ¶ 27). Even if this allegation satisfies the first element of his Section 2 Sherman Act claim, he has not pleaded facts that show his claim is plausible.

The second element of a claim under Section 2 of the Sherman Act requires a plaintiff to prove that a Defendant "willfully maintained" its monopoly. Plaintiff alleges it did so here based on a refusal to deal theory. "The central principle that governs refusal-to-deal claims is that, as a general matter, a monopolist has 'the right to refuse to deal with other firms,' which includes the right to 'refuse to cooperate with rivals.' "[22] The general "no-duty-to-deal" rule does, however, have a "narrow-eyed needle" of an exception.[23] A monopolist may run afoul of Section 2 of the Sherman Act despite the no-duty-to-deal rule, where it acts in a "predatory fashion"

by deliberately harming itself (and consumers) to harm its competitor more.[24] "Courts have accordingly coalesced around a three-part test for unlawful refusals to deal, drawn from" the Supreme Court's decision in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*[25]: (1) "there must be a preexisting voluntary and presumably profitable course of dealing between the monopolist and rival with which the monopolist later refuses to deal"; (2) "the refusal to deal must involve product the defendant already sells in the existing market to other similarly situated customers"; and (3) "the monopolist's discontinuation of the preexisting course of dealing must suggest a willingness to forsake short-term profits to achieve an anti-competitive end, rather than to advance a valid business purpose."[26]

***7** Here, Plaintiff's claim under Section 2 of the Sherman Act is not cognizable. A refusal to deal claim typically arises between rivals. Plaintiff does not allege that he is Defendant's rival or was attempting to compete with Defendant in the "subscription-based content creator" market. He alleges that he was at one time its "commissioned employee," and that during that time he sold his product using a marketplace Defendant provided. He alleges he has now been arbitrarily denied access to that marketplace. The "refusal to deal" at issue here, is Defendant's refusal to reverse its decision permanently banning Plaintiff from accessing its marketplace. Plaintiff does not allege any facts that suggest Defendant's decision to ban Plaintiff for violating its terms of service was a willful act in furtherance of maintaining its alleged monopoly over the "subscription-based content creator" market. Plaintiff's allegations are not the type of "refusal to deal" prohibited under the Sherman Act, and do not fall into any exception to the general "no duty to deal" rule. Therefore, we will recommend that claims three and five of the amended complaint be dismissed.

### D. Plaintiff's Federal Trade Commission Act Claim Should be Dismissed

In claim four, Plaintiff asserts a claim under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Plaintiff's FTCA claim is not plausible. Although the Third Circuit has not directly addressed this issue, other Courts of Appeals have overwhelmingly held that the FTCA does not provide a private right of action.[27] District Courts in this Circuit have similarly held that a private party cannot file an action under the FTCA.[28] Plaintiff is a private party. Therefore, he cannot proceed with this FTCA claim. Accordingly, we will recommend that Plaintiff's FTCA claim be dismissed.

### E. Leave to Amend Should be Denied

A court may grant a plaintiff leave to amend *sua sponte* before dismissing an action under 28 U.S.C. § 1915(e)(2).[29] Amendment should not be granted, however, if it would be inequitable or futile.[30] "Under Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend."[31] "Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.' "[32] Thus, in determining whether an amendment would be futile, we apply the same standard as we apply in determining whether a complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).[33] "In other words, '[t]he District Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff. "[34]

Here, the Court reviewed Plaintiff's initial complaint, and concluding that it failed to state a claim, afforded Plaintiff leave to amend. Then, Plaintiff submitted an amended complaint. In his amended complaint, Plaintiff asserts largely the same claims and did little to cure the defects we noted in his initial complaint. For example, Plaintiff did not allege any concerted action to support his claim under Section 1 of the Sherman Act, did not allege facts to support his refusal to deal claim under Section 2 of the Sherman Act, and continues to assert a claim under the Federal Trade Commission Act despite being told there is no private right of action. Because Plaintiff was given an opportunity to amend, and was unable to plead a plausible claim, granting further leave to amend is futile.

## V. RECOMMENDATIONS

***8** Based on the foregoing, we recommend that:

(1) Plaintiff's amended complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted;

(2) Further leave to amend be denied; and

(3) The Clerk of Court be directed to CLOSE this case.

**NOTICE OF LOCAL RULE 72.3**

NOTICE IS HEREBY GIVEN that any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4783840

Footnotes

1 28 U.S.C. § 1915(e)(2)(B).

2 28 U.S.C. § 1915(e)(2).

3 *See, e.g.*, *Endrikat v. Ransom*, No. 1:21-CV-1684, 2022 WL 4111861, at *2 (M.D. Pa. Sept. 8, 2022) ("In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.").

4 *Shorter v. United States*, 12 F. 4th 366, 374 (3d Cir. 2021).

5 *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted).

6 *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

7 *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

8 *Gindraw v. Sanford*, No. 3:24-CV-65-KAP, 2024 WL 3179781, at *2 (W.D. Pa. June 26, 2024).

9 *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

10 42 U.S.C. § 2000e-2(a).

11 *Goode v. New Jersey Dep't of Corr.*, No. 2:11-CV-06960 WJM, 2015 WL 1924409, at *8 (D.N.J. Apr. 28, 2015) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).

12 *Greene v. Virgin Islands Water & Pwr. Auth.*, 557 F. App'x 189, 195 (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 n.7 (3d Cir. 2003)).

13 *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788-789 (3d Cir. 2016).

14 *Id.* at 789 (quoting *Phillips v. Allegheny Cnty.*, 515 F.3d 224, 234 (3d Cir. 2008)).

15 *Muto v. Fenix Int'l Ltd.*, No. 5:22-CV-02164-SSS-DTBX, 2024 WL 2148734 (C.D. Cal. May 2, 2024).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

16 *Wiggins v. Universal Prot. Servs.*, No. CV 20-5617, 2022 WL 493410 (E.D. Pa. Feb. 17, 2022) (finding that simple speculation that an adverse employment action was based solely on gender is not enough to create a plausible inference of gender discrimination), *aff'd sub nom. Wiggins v. Universal Prot. Servs. LLC*, No. 22-1491, 2022 WL 4116912 (3d Cir. Sept. 9, 2022).

17 *Parker v. Learn Skills Corp.*, 530 F.Supp.2d 661, 675 (D. Del. 2008) (citing *Queen City Pizza, Inc. v. Dominos Pizza, Inc.*, 124 F.3d 430, 442 (3d Cir. 1997)).

18 *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

19 *Burtch*, 662 F.3d at 230 (affirming the dismissal of a Section 1 Sherman Act claim because the appellant failed to allege concerted action).

20 *New York v. Facebook Inc.*, 549 F.Supp.3d 6, 23-24 (D.D.C. 2021) (cleaned up), *aff'd sub nom.*, *New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023).

21 *Id.*

22 *Id.* at 24.

23 *Id.* at 24-25.

24 *Id.* at 26-27.

25 472 U.S. 585 (1985).

26 *Facebook*, 549 F.Supp.3d at 27 (cleaned up).

27 *See Wadlington v. Equifax*, No. 23-cv-3277, 2024 WL 3049576, at *2 (E.D. Pa. June 18, 2024) (citing *Am. Airlines v. Christensen*, 967 F.2d 410 (10th Cir. 1992), *Fulton v. Hecht*, 580 F.2d 1243 (5th Cir. 1978); *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232 (2d Cir. 1974), *Holloway v. Bristol-Meyers Corp.*, 485 F.2d 986 (D.C. Cir. 1973), and *Carlson v. Coca-Cola Co.*, 483 F.2d 279 (9th Cir. 1973)).

28 *Id.*; *see also*, *Carpenter v. Kloptoski*, No. 1:08-CV-2233, 2010 WL 891825, at *11 (M.D. Pa. Mar. 10, 2010); *Copeland v. Newfield Nat'l Bank*, No. 17-17 (NLH/KMW), 2017 WL 6638202, at *2 (D.N.J. Dec. 29, 2017).

29 *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).

30 *Id.*

31 *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).

32 *Id.* (quoting *In re Merck & Co. Sec., Derivative, & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007)).

33 *Id.*

34 *Id.* (quoting *Winer Family Trust v. Queen*, 503 F.3d 319, 330–31 (3d Cir. 2007)).

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.